Rockingham
No. 83-479

### THE STATE OF NEW HAMPSHIRE

v.

### DEAN SPRAGUE

August 15, 1985

*Gregory H. Smith*, attorney general (*Amy L. Ignatius*, attorney, on the brief), by brief for the State.

*Joanne S. Green*, assistant appellate defender, of Concord, by brief for the defendant.

BROCK, J. The defendant, Dean Sprague, after a trial held in Superior Court (*Bean*, J.), was convicted on six burglary indictments. RSA 635:1. On appeal, he alleges error by the trial court in denying his motion to suppress his confession as the product of an unlawful arrest, and in ruling that he was competent to stand trial. We affirm.

The defendant lived in Derry with Robert LaChance, a juvenile suspected of being involved in certain burglaries which had taken place during the fall of 1982. On December 7, 1982, Officer Kelly of the Derry Police Department went to LaChance's home to question the defendant about LaChance's alibi for one of the burglaries, which was that he had been with the defendant on the night in question.

After a few general questions, Officer Kelly asked the defendant to come with him to the police station for further questioning about the burglaries, as it would be more convenient to talk there. The defendant testified that he agreed to go because "[i]t didn't seem like the appropriate situation to be arguing with a police officer. It wasn't my home."

When they arrived at the station, the defendant was taken to a small interrogation room at the rear of the building. His *Miranda* rights were read to him, and he then gave an oral account of his activities at the time of the burglaries. The officer asked him to write out and sign a statement, which he did. The defendant testified that at no time was he told he was free either to leave or to discontinue the questioning.

Upon reading the defendant's statement, Officer Kelly brought LaChance to the station and questioned him about discrepancies between his statement and that of Sprague. LaChance then implicated both himself and the defendant in the burglaries. Officer Kelly returned to the interrogation room and formally placed the defendant under arrest. The following morning, after *Miranda* rights were again read to the defendant, Officer Kelly requested and the defendant wrote a detailed, lengthy statement in which the defendant admitted to the burglaries.

 At trial, the defendant was convicted of burglary on all six charges, and his confession was admitted over his motion to suppress. He was thereafter sentenced on two of the charges, with sentencing on the other four being continued. The defendant has brought this appeal alleging that his rights under the fourth amendment of the Federal Constitution have been violated. If the defendant was arrested in violation of his fourth amendment rights, then any evidence obtained pursuant to that arrest would be inad-

missible at his trial. *See Brown v. Illinois*, 422 U.S. 590, 601 (1975); *Wong Sun v. United States*, 371 U.S. 471, 484 (1963). Since the State did not have probable cause to arrest the defendant during the initial questioning, any arrest or equivalent seizure at that time would have been invalid. *Dunaway v. New York*, 422 U.S. 200, 207–14 (1979).

■ In 1980, the United States Supreme Court held that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (opinion of Stewart, J.); *see State v. Riley*, 126 N.H. 257, 263, 490 A.2d 1362, 1366 (1985). The defendant testified that at no time during the questioning did he feel free to leave, and argues that he was effectively placed under arrest when Officer Kelly asked him to go to the station. The State responds that the officer had no obligation to inform Sprague that he was free to leave, and points to the Court's statement in *Mendenhall* that "a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." *Mendenhall, supra* at 553.

The State contrasts the facts of this case with those in *Dunaway*, where the defendant was taken involuntarily by police car to the station for questioning. There, the Court stated that the defendant's detention "was in important respects indistinguishable from a traditional arrest," *Dunaway, supra* at 212, and valid only if supported by probable cause, *id.* at 216. The State contends that the defendant here was not a suspect when he was taken to the station and that he voluntarily responded to the questioning.

■ The State relies on the significant similarities between the facts in this case and those in *United States v. Brunson*, 549 F.2d 348, 357 (5th Cir.), *cert. denied*, 434 U.S. 842 (1977), where the defendant voluntarily accompanied the police officers to the station, and consented to having his statement recorded and his fingerprints taken. On this record, we agree that the trial court could have found that, when the defendant was asked to accompany Officer Kelly to the police station, a reasonable person would have felt that he was free to refuse. The court, as finder of fact in the suppression hearing, could decide whether or not to believe the defendant's testimony in this regard. *State v. Schultz*, 271 N.W.2d 836, 837 (Minn. 1978). We accordingly hold that the admission of the defendant's confession into evidence was proper.

■ The second question before us is whether the trial court used the proper standard in determining that the defendant was compe-

tent to stand trial. The defendant argues that the court did not apply the correct two-pronged test for competency, as promulgated by the United States Supreme Court in *Dusky v. United States*, 362 U.S. 402 (1960), and adopted by this court in *State v. Stiles*, 123 N.H. 680, 684, 465 A.2d 908, 911 (1983). In *Dusky*, the Court held that the test of a defendant's competency "must be whether he has sufficient ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky, supra* at 402.

In this case, the trial court found, beyond a reasonable doubt, "that the defendant is competent to stand trial, is competent to assist his counsel, and there is no evidence of mental disease, disorder or derangement which existed at the time of the alleged crimes. The Court further finds that the defendant has a rational understanding of the proceedings against him."

■ The defendant argues that the court failed to apply the complete *Dusky* standard, and that the finding of a rational understanding alone was not sufficient to support the finding of competency. We believe, however, that in this context the term "rational understanding" necessarily implies a corresponding factual understanding; thus, the court's decision complied with the substance of the *Dusky* criteria.

■ At the competency hearing, the State presented three witnesses who testified as to the defendant's competency. They stated that he was alert and capable of understanding his *Miranda* rights and that, in addition, he had no problem in writing a detailed, lengthy statement. The trial court's findings, based on this evidence, were reasonable.

*Affirmed.*

All concurred.